Filed 7/2/24  P. v. Alfaro CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>MIGUEL ALFARO,<br><br>　　Defendant and Appellant. | B331840<br><br>(Los Angeles County<br>Super. Ct. No. PA044147) |

　　APPEAL from an order of the Superior Court of Los Angeles County, Daniel Feldstern, Judge.  Affirmed.

　　Cynthia L. Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

　　Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Lauren N. Guber, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2022, while Miguel Alfaro was serving a long prison sentence, the Secretary of the California Department of Corrections and Rehabilitation (CDCR) requested that the court recall Alfaro's sentence in light of a recent amendment to Penal Code section 1385 and resentence him in accordance with now Penal Code section 1172.1.[1] After briefing and a hearing, the court denied the request on the ground that Alfaro presented an unreasonable risk of danger to public safety.

Alfaro contends the trial court abused its discretion, as the finding that he remained an unreasonable risk of danger was speculative and unsupported by the record. We disagree, and thus affirm the order.

## BACKGROUND

Alfaro has an extensive criminal history comprising 16 strike convictions in 11 separate felony cases between 1984 and 2004 and has been incarcerated for 40 of his 60 years, during which he attempted to escape twice. He was involved in approximately eight fights from 1989 to 2000 while incarcerated and was placed in a single-occupancy cell from 2009 to 2022 for the safety of the prison population.

In 2003, Alfaro pleaded no contest to three counts of residential burglary and one each of grand theft and receiving stolen property, and admitted five prior convictions within the meaning of the "Three Strikes" law. The trial court sentenced him to 40 years to life in prison, and we affirmed the conviction. (*People v. Alfaro* (Dec. 27, 2005, B174698) [nonpub. opn.].)

In 2004, Alfaro was removed from prison and transported to Men's Central Jail in Los Angeles County to be prosecuted for

---

[1] Undesignated statutory references will be to the Penal Code.

2

a residential robbery. A report detailed the facts of the robbery: In 2003, when he was 40 years old, Alfaro broke into the victim's home and encountered her in a bedroom, where he pushed her face down onto a bed and grabbed the waistband of her sweatpants. The victim begged Alfaro not to hurt her and led him to an envelope containing cash. Unhappy with the amount of cash in the envelope, Alfaro threw the victim to the ground and "hogtied" her on the kitchen floor with a telephone cord. He then ransacked the home, taking $500 cash and two expensive watches.

While in the Men's Central Jail, Alfaro obtained an assault rifle from someone outside the jail and attempted to escape, physically assaulting a custodial officer in the process. He was charged with escape from custody with the use of violence and a firearm. Pursuant to a negotiated plea, the court dismissed the residential robbery charge and sentenced Alfaro to 25 years to life for the aggravated escape, consecutive to the burglary sentence he was already serving.

On January 6, 2022, the CDCR Secretary Kathleen Allison requested that the court recall the 59-year-old Alfaro's sentence and resentence him in accordance with section 1172.1.

Allison stated: "[A]fter personally reviewing inmate Alfaro's commitment offense and in-prison conduct, I recommend that inmate Alfaro's sentence be recalled and that he be resentenced in accordance with PC section 1170, subdivision (d)(1)."

In support, Secretary Allison attached a report from a corrections counselor concerning Alfaro's conduct in prison. It indicated that Alfaro tested negative for drugs five times and had no pending disciplinary actions. He received his GED while in

Soledad State Prison on November 12, 1986, and received satisfactory marks in computer and office worker vocational training and for his service as a dining room worker, and exceptional marks for his performance as a yard worker. He was commended twice for his progress in anger management counseling.

However, in 2006 and 2009, Alfaro received three rules violation reports for fighting, battery on an inmate with serious bodily injury, and "mutual combat resulting in use of force." In 2005 and 2010, Alfaro was counseled three times regarding theft of state property, disobeying orders, and consuming medication at the medication window rather than placing it in his pocket.

After briefing by the parties, the trial court held a hearing on the CDCR's request. At the hearing, the court observed that although Alfaro committed several crimes during much of his adult life, his most recent crimes occurred in his mature years, and escalated significantly. He broke into a woman's home and bound her wrists and ankles with a telephone cord when the victim did not produce enough cash in response to his demands. He then conspired to escape from custody, and physically assaulted and threatened to kill a custodial officer while armed with an assault weapon. The court reasoned that although Alfaro was not convicted of a "super strike," his "willingness to kill somebody in an attempt to escape" demonstrated he was "someone who could reasonably commit one," and he thus posed an ongoing danger to society. Accordingly, the court denied the CDCR's request that Alfaro be resentenced.

## DISCUSSION

Alfaro contends the trial court abused its discretion in denying his motion for resentencing. We disagree.

4

**A.	Law Governing a Request for Resentencing**

"When a defendant, upon conviction for a felony offense, has been committed to the custody of the Secretary of the Department of Corrections and Rehabilitation . . . , the court may, . . . at any time upon the recommendation of the secretary . . . , recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, . . . provided the new sentence, if any, is no greater than the initial sentence." (§ 1172.1, subd. (a)(1).)

Should the trial court decide to recall the sentence and resentence the defendant, it must "apply the sentencing rules of the Judicial Council and apply any changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing" (§ 1172.1, subd. (a)(2)) and "may, in the interest of justice . . . [¶] . . . [r]educe a defendant's term of imprisonment by modifying the sentence." (*Id*. at subd. (a)(3)(A).)

"In recalling and resentencing pursuant to this provision, the court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.1, subd. (a)(4).)

If a resentencing request is from the Secretary of the Department of Corrections and Rehabilitation, "[t]here shall be a presumption favoring recall and resentencing of the defendant,

5

which may only be overcome if a court finds the defendant is an unreasonable risk of danger to public safety, as defined in subdivision (c) of Section 1170.18." (§ 1172.1, subd. (b)(2).)

Subdivision (c) of section 1170.18 defines "unreasonable risk of danger to public safety" as "an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." Section 667, subdivision (e)(2)(C)(iv) lists several violent felonies, including "[a] 'sexually violent offense,' " "[a]ny homicide offense, including any attempted homicide offense," "[a]ssault with a machinegun on a peace officer or firefighter," and "[a]ny serious or violent felony offense punishable in California by life imprisonment or death."

We review denial of recall for an abuse of discretion. (*People v. E.M.* (2022) 85 Cal.App.5th 1075, 1082.) In doing so, we presume the ruling is correct, indulging all intendments and presumptions in favor of its correctness; the appellant bears the burden of providing an adequate record affirmatively proving error. (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.)

## B.    Alfaro's Claims of Error Do Not Warrant Reversal

Alfaro aptly observes that under the statutory scheme outlined above, a resentencing request from the Secretary of the CDCR raises a presumption favoring resentencing which may only be overcome if the court finds the defendant currently poses an unreasonable risk of committing a new violent felony such as a homicide offense or assault on a peace officer with a machine gun.

The trial court's finding that Alfaro posed such a risk was supported by several facts: Alfaro committed more than a dozen strike offenses over the course of 20 years, during most of which

6

time he was incarcerated. His last three offenses occurred not in his distant youth but when he was 40 years old, and were progressively more violent, culminating in an assault on a peace officer with an assault weapon and a death threat in an attempted prison escape.

This record readily supports the court's finding that Alfaro's willingness to kill someone in an attempt to escape prison could reasonably find its outlet the next time he robbed a house and faced apprehension by police, both of which circumstances the record demonstrates are reasonably likely to occur.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

BENDIX, Acting P. J.

WEINGART, J.